510 So.2d 127 (1987)
Kenneth Ray ELMORE
v.
STATE of Mississippi.
No. 56553.
Supreme Court of Mississippi.
July 15, 1987.
*128 W. Stewart Robison, Bryan C. Harbour, Kathleen P. Harbour, Ribison & Harbour, McComb, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and SULLIVAN, JJ.
DAN M. LEE, Justice, for the Court:
Kenneth Ray Elmore appeals his conviction of sexual battery of V.E., his 13-year-old stepdaughter. A jury found him guilty after trial in the Circuit Court of Amite County and he was sentenced to 15 years in the custody of the Mississippi Department of Corrections.
Elmore assigns three errors in the trial below; however, we address only one, for we find that this conviction must be reversed because of the improper admission into evidence of other sexual crimes remote in time and with third parties.

FACTS
V.E. testified that she and her sister, S.E., were home in the family trailer on the afternoon of August 6, 1983, in the living room watching television with their stepfather, Kenneth Ray Elmore. V.E. was sitting in a loveseat when Elmore picked her up and started carrying her down the hall toward a bedroom. (R. 44-45) Upon arrival, he laid V.E. on the bed, removed her pants, penetrated V.E.'s vagina and finished the sex act. V.E. said she struggled to free herself, but Elmore was not deterred. She was 13 years old at the time of the alleged assault.
V.E.'s sister, S.E., basically corroborated V.E.'s account, though she did not witness the alleged sex act because she was watching the door.
The incident did not come to light until February 11, 1984, when V.E. wrote a letter telling of the assault to her uncle, her mother's brother, which S.E. delivered. Her uncle waited a couple of days before he told the children's mother. The mother and uncle then got the children out of school February 13, 1984, and questioned them about the incident. During questioning, V.E. and S.E. divulged several other alleged incidents of sexual misconduct by Elmore.
Her mother told V.E. to write out what she remembered about this and other alleged incidents. The note V.E. wrote appears in the record as an exhibit for identification and gives dates and corresponding descriptions and reasons why V.E. remembered the dates and incidents.
V.E.'s testimony at trial did not closely coincide with what she had written about the incident. Her testimony more closely followed her written description of another alleged incident on a different date. She stated on redirect that she initially confused some of the dates when she wrote the note, but she was no longer confused.
*129 The jury saw only that part of V.E.'s note describing events on August 6, 1983, the date of the charged offense. Most of the other alleged incidents described on the note occurred subsequent to the charged offense. The trial court ruled these inadmissible.
However, V.E. and her sister S.E. were allowed to testify over objection to several alleged acts of sexual misconduct occurring prior to August 6, 1983. This testimony will be discussed in greater detail. Infra.
The prosecution introduced testimony from a Dr. Edsel Stewart, a gynecologist who examined V.E. on February 14, 1984, which revealed that she was not a virgin.
Dr. Stewart also testified that it was possible some object inserted into the vagina could give the same indication. There was evidence introduced by the defense that V.E. might have inserted some object, or had intercourse with someone other than Elmore.
Elmore's principal defense was alibi. He testified in his own behalf and emphatically denied that he had ever sexually molested either of his stepdaughters. V.E.'s testimony set the time of the assault at about 3:00 p.m. on August 6, 1983. However, Elmore testified that on the date of the charged offense, he left his home at 4:00 a.m. and traveled to Bay St. Louis, Mississippi, to deliver quail for his business. He arrived back home at approximately 4:00 p.m. and went to a fish fry.
Elmore's alibi was corroborated by Donald Brooks who testified that he was with Elmore in Bay St. Louis until 4:00 p.m. and subsequently went with Elmore to a fish fry at the Donald Brooks home which lasted until approximately 8:00 or 9:00 p.m. on August 6, 1983. Further corroboration of Elmore's alibi defense was offered by Becky Brooks Moore, the daughter of Donald Brooks, and Rachel Elmore, wife of the defendant and mother of both the prosecutrix and S.E. Mrs. Elmore had initially instigated the investigation and cooperated with the authorities in the beginning. However, later she became aware of the incidents tending to establish Elmore's alibi, and she discovered evidence of V.E.'s other sexual exploits. She said she came to believe her daughters were lying about Elmore's actions and testified in his behalf at trial.
After trial and sentencing, and while a motion for new trial was pending, present counsel for Elmore was substituted. An amended motion for judgment notwithstanding the verdict or in the alternative a new trial followed. This was denied, and this appeal followed in due course.

I
At trial, V.E. and her sister S.E. testified to several sexual incidents other than the crime for which Elmore was on trial.
Defense counsel lists 14 separate incidents of other sexual crimes, though it is clear some of them overlap. Included among the 14 are alleged instances where Elmore subjected either one or both of the girls to fondling, oral sex, intercourse, masturbation and exposing himself.
V.E. testified that she and S.E. were forced to perform acts of fellatio with the defendant on some vaguely described occasion sometime between 1979 and 1981. She likewise testified over objection that she and S.E. were forced to masturbate Elmore some time after 1979 but before 1981.
S.E. testified that after her mother married Elmore their relationship was good until they moved into the family trailer in 1979. This exchange followed:
Q. OK, what change occurred with reference to your relationship with your stepfather?
A. Well, Ken had tried to put his mouth on us and put his hands on my private parts.
S.E. also testified that she had reported to her school principal that Elmore had done something to her in 1981, but her mother thought it just a nightmare. She further testified:
A. And then after that, he kept on messing with me and my sister, and then after that he kept messing with me; and then I went to my grandmother.
*130 S.E., the sister of prosecutrix, had turned 12 years of age only a short time before trial; therefore, these acts could have amounted to any number of sex offenses. See, e.g., Miss. Code Ann. § 97-5-23 (1972) (touching, handling, etc. of a child for lustful purposes); Miss. Code Ann. § 97-3-95(c) (Supp. 1986) (sexual battery of a child); Miss. Code Ann. § 97-29-59 (1972) (crimes against nature).
Of course, Elmore had not been convicted of any of these crimes, and they were vaguely referenced to have taken place sometime between 1979 and 1981. Thus, Elmore was put to the task of refuting evidence of sexual crimes against his step-daughters dating back as far as four years prior to the alleged offense.

II
Was Appellant Denied a Fair Trial by the Introduction of Evidence of Prior Alleged Sexual Offenses with Persons Other than the Prosecutrix?
Appellant suggests that some of the acts testified to were too remote, having occurred almost four years before the charged incident. He also argues that some of the acts were dissimilar to the charged offense, and, therefore, should not have been admitted.
We need not discuss these contentions, however, for we think the trial court erred in allowing into evidence testimony concerning sexual crimes between Elmore and the prosecutrix's sister, S.E., a third party.
Our most recently reported opinions proclaim the rule which prohibits the admission of evidence of other crimes not resulting in conviction and for which the accused is not on trial with certain exceptions. Smith v. State, 499 So.2d 750 (Miss. 1986); Thomas v. State, 495 So.2d 481 (Miss. 1986); Coates v. State, 495 So.2d 464, 468 (Miss. 1986); Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); Gallion v. State, 469 So.2d 1247, 1249-50 (Miss. 1985); West v. State, 463 So.2d 1048, 1051-52 (Miss. 1985).
As we stated long ago in King v. State, 66 Miss. 502, 506, 6 So. 188, 189 (1889) (quoted in West, 463 So.2d at 1052):
The general rule is, that the issue on a criminal trial, shall be single, and that the testimony must be confined to the issue, and that on the trial of a person for one offense, the prosecution cannot aid the proof against him, by showing that he committed other offenses. Whart.Cr.Ev. § 104; Bish.Cr.Pro., § 1120 et. seq. The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice and oppression in criminal prosecutions. Such evidence tends to divert the minds of the jury from the true issue, and while the accused may be able to meet a specific charge, he cannot be prepared to defend against all other charges that may be brought against him.
This Court has, on occasion, considered the admission of evidence of other crimes as suggesting a violation of the fundamental right to a fair trial. See Gallion, 469 So.2d at 1249-50, or simply violating notions of fundamental fairness, Hughes, 470 So.2d at 1048. The exceptions to the rule are as familiar as the rule itself.
It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.
Tucker v. State, 403 So.2d 1274, 1276 (Miss. 1981) citing Gray v. State, 351 So.2d 1342, 1351 (Miss. 1977). See also, Tobias, 472 So.2d at 400.
*131 The question here is whether the jury was improperly diverted from the only issue in this case  that being, did Elmore commit sexual battery on August 6, 1983. We think the likelihood that the jury was distracted is too great to allow Elmore's conviction to stand.
This Court on numerous occasions has discussed admitting evidence of other crimes in a sex offense context. See Speagle v. State, 390 So.2d 990 (Miss. 1980); Brooks v. State, 242 So.2d 865 (Miss. 1971). See also the numerous cases from other jurisdictions collected at Annot. 77 A.L.R.2d 841 (1961 & Supp. 1986). Most recently we have addressed the same question in sexual battery prosecutions. Coates v. State, 495 So.2d 464 (Miss. 1986); Hicks v. State, 441 So.2d 1359 (Miss. 1983). See also Cantrell v. State, 507 So.2d 325 (Miss. 1987).
In summarizing our precedent in Coates, this Court stated:
"In the context of sexual crimes, however, we have long recognized a relaxation of that rule [prohibiting evidence of other crimes]... . [W]e have regarded that substantially similar prior sexual acts with the same person, that is, sexual acts of the same general type as those charged in the indictment," are probative and admissible.
Coates, 495 So.2d at 468.
Elmore is charged only with committing sexual battery upon V.E. It is Elmore's alleged criminal act toward V.E. which the state attempted to prove. Any attempt by Elmore to commit sexual battery on the rest of his family, while arguably relevant, is far less probative and at least equally, if not more, prejudicial. We hold that the admission of evidence of remote instances of sexual misconduct with someone other than the prosecutrix was reversible error.
Accordingly, we reverse and vacate the order and sentence of the Circuit Court of Amite County, Mississippi, and remand for a new trial.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.