# IN THE COURT OF APPEALS 01/28/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-01378 COA


EDDIE NICHOLSON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. JOSEPH H. LOPER, JR.

COURT FROM WHICH APPEALED: WINSTON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

JAMES C. MAYO

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: PAT FLYNN

DISTRICT ATTORNEY: DOUG EVANS; KEVIN HORAN

NATURE OF THE CASE: CRIMINAL - SEXUAL BATTERY

TRIAL COURT DISPOSITION: FOUND GUILTY AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS

MOTION FOR REHEARING FILED: November 3, 1997

BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:


 Eddie Nicholson was found guilty of sexual battery. He appeals, arguing that the court erred in allowing rebuttal testimony of an alleged sexual act with another person, and then not allowing surrebuttal; in permitting the indictment to be amended and not permitting a continuance as a result of the amendment; in failing to require the State to provide proper and timely discovery; and in allowing the state to present at trial statements made before the grand jury. It is also alleged that the verdict was against the overwhelming weight of the evidence. None of these issues have merit, and we affirm.

FACTS

Nicholson coached a girls' softball team in Louisville during the summer of 1993. An eleven-year-old girl, A.N., was a member of the team. A.N. testified that on the way back from a bus trip with the softball team on June 23, 1993, Nicholson made her sit on the seat with him. Nicholson ran his hand under the girl's shorts and put his finger in her vagina. Several days after the trip, A.N. told her mother about the abuse. Her mother filed a complaint against Nicholson.

The grand jury indicted Nicholson, charging sexual penetration with a finger "on or about" June 21, 1993. On the day of the trial, the date in the indictment was amended to read June 23. Nicholson was tried and convicted of sexual battery and was sentenced to twenty years in the custody of the Mississippi Department of Corrections.

DISCUSSION

Nicholson alleges six points of error, as follows.

*1. Rebuttal Testimony by Another Alleged Victim*

In response to his attorney's question, Nicholson denied that A.N.'s allegations were true. He then said "I've never done anything wrong to any child. I never have and I never will." On cross-examination by the State, he then specifically denied that he had ever touched Y.T., another member of the team.

Q: When your attorney was asking you questions a while [ago], isn't it a fact that you made the statement that you had never done anything wrong to any child?

 A. Right.

 Q. Isn't it a fact that before one of the baseball practices while you were coaching the team that you carried [Y.T.] to the store, just the two of you, and during the time that you carried her to the store you fondled her and was feeling of her, specifically feeling of her breasts?

A. No, I did not.

Q. Do you deny that that happened?

A. I deny that happened.

After this testimony was given, the state called Y.T. as a rebuttal witness. She testified that on a trip to a store before practice, that Nicholson touched her on her bottom and that she had to push his hand away five or six times and scooted away from him on the seat. Nicholson argues that allowing this testimony of other similar crimes was reversible error. Regardless of the admissibility of this line of evidence in the State's case-in-chief, Y.T. was called as a rebuttal witness to refute Nicholson's testimony that he had not done anything like this to any child, and specifically not to her. The caselaw cited by Nicholson does not deal with rebuttal, impeachment testimony. *See*, *Elmore v. State*, 510 So. 2d 127 (Miss. 1987) and *Mitchell v. State*, 539 So. 2d 1366 (Miss. 1989). The only case Nicholson relied upon in the trial court was *Elmore*, and it is a pre-Rules of Evidence case that does not address the applicable rules.

The issue as Nicholson presented it was under Rule 404 (b). Proof of prior bad acts cannot be admitted when the effect is only to suggest that the defendant acted in the same way towards the victim of the crime charged. Nicholson's attorney did refer to "Rule 404 (2)" and argued that the State was not entitled to show a pattern of misconduct. Mississippi Rule of Evidence 404 allows certain exceptions to the general rule that evidence of other crimes or wrongs cannot be used.

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same . . . .

M.R.E. 404.

Subsection (a) allows evidence of a person's character or trait of his character into evidence to rebut evidence of a pertinent trait put in issue by the accused. "Not all aspects of the accused's character are open to scrutiny under this exception. The prevailing view is that only pertinent traits -- those involved in the offense charged -- are provable." 1 MCCORMICK ON EVIDENCE, § 191 (1992). Nicholson put a pertinent character trait in issue by saying that he never had and never would commit a sexual assault of a child. The state was allowed to rebut that evidence. That does not end the analysis, however.

Rule 405 describes what kind of evidence is admissible.

> (a) **Reputation or Opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (B) **Specific Instances of Conduct.** In cases in which character or a trait of character of

a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

M.R.E. 405. Thus even when character is in issue, generally only opinion evidence is admissible, though the witness himself may be cross-examined on specific instances. Rule 405 (a); 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE, § 5268 at 609-614 (1978) (footnotes omitted). The supreme court held that evidence of a victim's propensity to threaten with a knife was relevant character evidence when a defendant on trial for murder pled self-defense. *Heidel v. State*, 587 So. 2d 835, 846 (Miss. 1991). The court held it error to exclude the testimony. Rule 405 limits direct evidence of specific conduct to when the character trait is "an essential element of the . . . defense. . .." In *Heidel,* the self-defense argument meant that the victim's threatening propensity was a central element. *Heidel,* 587 So. 2d at 846. There were four dissenters, but their point was that self-defense had not yet been raised in the trial and Rule 405(b) was not yet applicable. *Id.,* 587 So. 2d at 848.

Nicholson was properly cross-examined about the specific instance of conduct with another player. Allowing the player herself to detail what happened, i.e., testify as to a "specific instance," was proper only if the trait under Rule 405(b) was "an essential element" of the charge or defense. According to one authority, the "cases in which character is an ultimate issue are relatively few; examples include a civil action for defamation of character where the defense of truth is raised [there was no defamation; the "victim" already had a justly-earned bad reputation] or a prosecution under a federal statute that the defendant be shown to be engaged in the business of gambling." 22 WRIGHT & GRAHAM, § 5267 at 602 (footnotes omitted).

It is evident that a defendant's character is not an essential element of the charge or defense merely because the defendant raises his character as an issue. The charge here was sexual assault of a minor. Nicholson stated that he would not commit such an assault. Even if Nicholson had never previously exhibited a trait of character suggesting that he could assault children, he could still be guilty of committing this assault. Proof that Nicholson had previously engaged in such crimes might be probative, i.e., make it more likely than not that he did so here, but such prior conduct is not an element, much less an essential element of this crime.

Once Nicholson testified as to his character trait, the State was entitled to rebut it by showing that Nicholson had a reputation, or that witnesses had an opinion, that he was someone who would assault children. Rule 405 permits no witnesses to testify on direct as to specific instances of that conduct unless the trait is an essential element of the crime. The other alleged victim's testimony regarding what had happened to her should not have been admitted.

This bar to evidence of specific conduct "is founded on considerations of fairness and efficiency." 22 WRIGHT & GRAHAM, § 5266 at 596. It may not be efficient in this case if a retrial is required, nor fair to the victims. An understanding of the rule, however, which is a codification of the common law, would have avoided the problem that we now face here.

The State argued below that the evidence was admissible as general impeachment. The relevant evidentiary rule states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting

his credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence . . .

M.R.E. 608 (b). The supreme court has interpreted this to bar the calling of witnesses to prove in a rape case that the victim's husband, who said he was living by himself apart from his wife, was in fact living with another woman. *Jackson v. State,* 645 So. 2d 921, 923 (Miss. 1994). Attempting to impeach the witness on whether he was living with another woman could only be done through cross-examination, not by "extrinsic evidence." *Jackson,* 645 So. 2d at 923-24. Thus no "extrinsic evidence" could be used to impeach Nicholson under Rule 608(b). The other victim's testimony was extrinsic evidence.

Two grounds would keep us from reversing this conviction because of the errors. One is if the points were not properly preserved; the other is if the error was harmless. Nicholson did not cite Rule 405 or Rule 608 below or here. At trial his attorney argued that the State was not entitled to prove "a pattern under your Rule 4.04 (2), whatever rule of evidence you cited, as to a pattern for the commission of crime." The attorney also said that the evidence was prejudicial. The attorney objected to the cross-examination of Nicholson himself, saying that the State "just can't go into anything with anybody else." The court made a proper ruling based on the issues as presented to him. This was proper rebuttal to a trait of character put in evidence by the defendant himself. He could be cross-examined as to a specific instance. The problem of the *form* of the evidence -- specific instances of conduct testified to by another victim, as opposed to reputation/opinion -- was not raised. As the supreme court said, "There are three basic considerations which underlie the rule requiring specific objections. It avoids costly new trials. It allows the offering party an opportunity to obviate the objection. Lastly, a trial court is not put in error unless it had an opportunity to pass on the question." *Oates v. State,* 421 So. 2d 1025, 1030 (Miss. 1982) (citations omitted). The application of those reasons in this case are obvious. The State was entitled to impeach the defendant on the issue of this character trait. Had Rules 405 or 608 been raised, the judge could have made the correct ruling, the State adjusted its presentation to opinion evidence, and thus no new trial would even be considered.

We need not reach the harmless error issue. We reject this alleged error because it was not properly preserved.

2. *Should surrebuttal testimony have been allowed?*

Nicholson argues that since the rebuttal witness was allowed, he should have been allowed surrebuttal in order to refute the charges made against him. The trial court did not believe surrebuttal generally to be proper. The supreme court has held to the contrary, saying that "[t]he rule is well settled in this state that where rebuttal evidence is introduced, surrebuttal should be allowed, particularly where to fail to do so would be prejudicial." *Culberson v. State*, 405 So. 2d 126, 127 (Miss. 1981). But the error in denying surrebuttal is harmless unless Nicholson had something to say that could have had an impact on the jury. This is what he offered:

> The Defendant requests the right to offer in surrebuttal the testimony of the Defendant, Eddie Nicholson, as to whether or not he took [Y.T.] and put his hands on her or did the acts that were brought out over the Defendant's objections in rebuttal. It was not brought

out by the State in chief nor was it brought out when the Defendant put on his case. There was never any question asked about [Y.T.] until he put on rebuttal, and we request the opportunity on the part of the defendant to rebut whether or not --

As quoted in the preceding issue, Nicholson was asked on cross-examination whether he had ever improperly touched the other player. He denied that he "fondled her and was feeling of her" on the trip to the store. There were some differences in what Nicholson was asked on cross-examination and what Y.T. testified. Did the event occur before or instead after practice, and did Nicholson touch her on her bottom or on her breasts? Nicholson had generally denied any touching, and specifically denied touching her on her breasts. Therefore Nicholson's complete denial was already before the jury.

Nicholson's attorney requested surrebuttal because "[t]here was never any question asked about [Y.T.] until he [the assistant district attorney] put on rebuttal, and we request the opportunity on the part of the Defendant to rebut . . . ." The State responded that Nicholson's counsel was in error, and that he had specifically asked about Y.T. The Court then said the State had already examined Nicholson on this point. Defense counsel interjected "Not about [Y.T.]," but the Court corrected him: "Yes, sir, on cross examination." Further denials would have been repetitious. To the extent Nicholson wanted to make more specific denials about what part of the girl's anatomy he touched, that issue was never brought to the trial court's attention and is not the focus of the appellate argument either. There was no reversible error in the court's refusal to permit Nicholson again to deny the allegations.

*3. Denial of a Continuance After the State was Allowed to Amend the Indictment*

Nicholson argues that the court should have allowed him a continuance after it permitted the state to amend the indictment changing the date of the offense from June 21, 1993 to June 23, 1993. The court allowed the amendment during pretrial arguments on the day of the trial. Nicholson's counsel objected to the amendment because he was not informed of the proposal until the day before the trial. He also alleged such a date change would be "crucial because of the Little League schedule," i.e., he had prepared his defense based on what occurred in the Little League schedule on the day alleged in the indictment. He concluded by stating that the date amendment "could change our defenses substantially."

The first problem is that the indictment did not charge the event occurred specifically and only on June 21, but instead charged a crime "on or about June 21." The Supreme Court has "refused to reverse because of an amended indictment where the variance was 'not material to the merits of the case and if the defendant cannot be prejudiced thereby in his defense on the merits.'" *McLamb v. State*, 410 So. 2d 1318, 1319 (Miss. 1982); quoting *Jones v. State*, 279 So. 2d 650 (Miss.1973). The first indictment put Nicholson on notice that he needed to prepare a defense for anytime on or about June 21, 1993. Furthermore, then-Rule of Circuit Court Practice 2.05 held that failure to state the correct date in an indictment does not render the indictment insufficient. *See,* U.C.C.C.R. 7.06.5. There are exceptions. "In all fairness, notice of a specific date is often essential to the preparation of a defense -- especially where an alibi defense is relied on." *Wilson v. State*, 515 So. 2d 1181, 1183 (Miss. 1987). There was no alibi defense here that was destroyed by a change in the date charged in the indictment. We are left with the general rules of whether the defendant had fair notice of the

crime charged. Nicholson knew he had to defend against the charged sexual assault of this child, and that he had to defend based on incidents that would be proven to have occurred on or about June 21. This indictment was not unfairly general in its allegations.

There is no specific argument here that Nicholson was misled by the date, thinking that the alleged incident occurred at whatever was on the softball schedule -- if anything was -- on June 21, as opposed to the bus trip of June 23. For example, he does not argue that the schedule for June 21 indicated a different bus trip. According to the discovery response, the State provided statements by the victim, her mother, and a third person. Those statements are not in the record and thus we do not know whether the statements refer to a bus trip. There also had been a preliminary hearing at which the victim testified. Nicholson's attorney at trial cross-examined her about why she did not mention at the preliminary hearing that Nicholson had penetrated her with his finger, but he does not suggest he was learning for the first time that the sexual encounter was alleged to have occurred during the relevant bus trip. Without any evidence or even allegation that Nicholson was unaware that the incident against which he was to defend occurred on a team trip on a bus, a change in the date in the indictment did not prejudice him.

The fact that in this case there was a schedule of ball games and practices does not mean that totally new rules must apply to "on or about" dates in an indictment. Through any reading of the indictment, a two-day differential, when alibi is not the defense and there are no specific allegations of the nature of the prejudice, does not constitute unfair surprise.

*4. Proper and Timely Discovery*

Nicholson alleges that the state failed to provide him with proper and timely discovery under then-Rule 4.06 of the Mississippi Rules of Circuit Court Practice. He contends that the State failed to disclose any of the sixty-five people who were on the bus during the trip. However, the evidentiary rules only require that information be given in discovery *upon written request*. We have reviewed the discovery request of the parties, and find that there was never a written request for information on everyone whom the State thought might have some knowledge of the offense. In his Motion for Discovery, Nicholson asked for the "names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial. . ." The state provided that list. In fact, the relevant discovery rule does not refer to any obligation for the State to name everyone with some knowledge of the case. *See,* U.C.C.C.R. 9.04. Had Nicholson asked for such a list, the State might have provided it or the trial court may have been called upon to determine its necessity. Regardless, there is no error in failing to provide something that was not requested. The State would have a discovery obligation regarding people on the bus in more limited ways, such as the State's becoming aware of a passenger who had exculpatory evidence. We have no evidence of that.

Nicholson also argues that the state should have provided him with the name of the state's rebuttal witness, Y.T. However, Rule 4.06 does not require such a disclosure. "Rule 4.06 plainly limits disclosure to witnesses to be offered on the case in chief." *Shavers v. State*, 455 So. 2d 1299, 1301 (Miss. 1984). Rebuttal witnesses are a recognized exception to witness disclosure requirements. *Id.*

*5. Admissibility of Statements Made Before Grand Jury*

Nicholson argues that the court erred in allowing the State to question the victim named in the

indictment (A.N.) about statements she made at the grand jury hearing. He contends that her response to questions asked by the state bolstered her testimony. He further argues that this testimony was hearsay and not an exception to the Rules of Evidence.

Nicholson's attorney asked the victim during cross-examination whether her direct testimony at trial was the first time she had said anything about Nicholson's having inserted his finger into her vagina. She answered, "Yes, because they asked me." On re-direct, the State asked her "when was the first time that anybody asked you to explain how he was feeling of you?" She replied: "When I was over here at the Grand Jury." A.N. was then asked what she told the grand jury. Rule of Evidence 607 states that "[t]he credibility of a witness may be attacked by any party, including the party calling him." Therefore, the State was entitled to impeach their own witness by asking her, despite what she answered on cross-examination, whether she had not in fact previously testified about being penetrated by Nicholson.

On the hearsay aspect of this issue, we turn to Rule 801(d)(1):

> A statement is not hearsay if:
>
> (1) *Prior Statement by Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty or perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication . . .

The comments to Rule 801(d)(1)(A) hold that "statements made before a grand jury" fit within the judicial proceeding category. The evidence was also admissible as a prior consistent statement introduced to refute a charge of recent fabrication. M.R.E. Rule 801(d)(1)(B). Nicholson's hearsay argument is unavailing.

*6. Overwhelming Weight of Evidence*

In his last argument for reversal, Nicholson contends the lower court erred in overruling his motion for directed verdict. The standard of review in this Court for defendant's renewed motion for directed verdict at the close of all evidence is as follows:

> The standard of review for denial of a request for peremptory instruction is the same as for denial of a motion for directed verdict. The trial court must consider all the evidence in the light most favorable to the state. If the facts and reasonable inferences will support a verdict of guilty, then the directed verdict and peremptory instruction must be denied.

*Weeks v. State*, 493 So. 2d 1280, 1282 (Miss. 1986).

Without repeating the details already given about the evidence presented at trial, we find that there was ample evidence to support the jury's verdict.

**THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE IMPOSED SHALL RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. COSTS ARE ASSESSED TO THE APPELLANT.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, AND PAYNE, JJ., CONCUR.**