# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CT-01378-SCT

*EDDIE NICHOLSON*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/93 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES C. MAYO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/15/97 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## Introduction

¶1. This matter comes before the Court, en banc, after granting petitioner's application for writ of certiorari on May 29, 1997. Eddie Nicholson was indicted by a grand jury of Winston County for the crime of sexual battery, charging sexual penetration of an eleven year old girl with his finger. Nicholson was convicted of sexual battery by a jury of his peers, and sentenced to twenty years in the custody of the Mississippi Department of Corrections by the Circuit Court of Winston County, Mississippi, on November 30, 1993. The Court of Appeals affirmed the lower court on January 28, 1997, and denied the petition for rehearing on April 8, 1997. The petition for writ of certiorari was filed with this Court on April 17, 1997.

¶2. The following issues were raised for certiorari review:

**I. The lower court erred in allowing rebuttal testimony of an alleged sexual act with another person;**

**II. The lower court erred in denying surrebuttal testimony by Nicholson;**

**III. The lower court erred by denying a continuance after the State was allowed to amend the indictment and the State improperly amended the indictment; and**

**IV. The State failed to provide proper Rule 4.06 discovery.**

¶3. The Court granted certiorari review on Issues I. and IV., found Issue II. to be moot, and denied certiorari review of Issue III.

## Statement of the Case

¶4. Eddie Nicholson was the coach of a girls' softball team in Louisville, Mississippi, during the summer of 1993. L.T.B. testified that on a bus trip back from a game in DeKalb, Nicholson ran his hand up her leg and put his finger in her vagina.[1] She also testified that several times during that summer he had taken her and other team members home from practice and games. He would take the others home first, and then on the way to her house he would feel her breasts and between her legs. L.T.B. said this started on the second day of practice. On one occasion, he pulled out his penis and tried to make her hold it.

¶5. Several days after the DeKalb trip, L.T.B. told her mother about the recurring abuse. Mrs. B. then made a complaint to the Louisville Police Department. Nicholson was indicted by the grand jury of Winston County for sexual battery, convicted, and sentenced to twenty years in the custody of the Mississippi Department of Corrections.

## Analysis and Authority

## I.

¶6. The lower court permitted the State to cross-examine Eddie Nicholson about allegedly touching and fondling the breast of C.D., a teammate of L.T.B., over Nicholson's objection and continuing objections. This allegation was not charged in the indictment against Nicholson. The court had previously denied Nicholson's motion in limine on this same issue.

¶7. The court, in rebuttal, permitted the State to call C.D., though she was not disclosed or listed in discovery, but was sworn as a witness before the trial commenced. Over Nicholson's strenuous objection, C.D. was permitted not only to testify, but to testify in rebuttal about alleged specific sexual acts of Nicholson toward her. Nicholson asserts that admission of evidence of remote sexual activity with someone other than the prosecutrix is reversible error.

¶8. The following testimony is pertinent to this issue. On direct examination of Nicholson by his attorney, in response to the question of whether or not Nicholson "did or didn't" he answered:

> A. <u>NICHOLSON:</u> I didn't touch this child in any type form or fashion. The only thing I did was try to help them play softball better. *I've never done anything wrong to any child. I never have and I never will.*

¶9. On cross-examination by the State, Nicholson was asked:

> Q. THE STATE: Do you deny that you have also committed an offense like this. . . .

¶10. At this point, counsel for Nicholson began objecting, and asked that the question be asked outside the presence of the jury; questioning continued with the jury out.

### FURTHER CROSS-EXAMINATION BY THE STATE

> Q. Mr. Nicholson, do you deny that before ball practice on one of the occasions that you carried C.D. to a store and at which time you were fondling her and feeling her breasts?
>
> A. Nicholson first said he couldn't remember and when pressed said "I'm denying it."

¶11. The State argued that Nicholson, by stating on direct examination that "he had never done anything like this to any child," had "opened the door to us going into other acts that he had committed with other children when he did that."

¶12. Counsel for Nicholson objected and argued, "Your Honor, I have all kind of cases here that he cannot go into anything with someone else." The State responded that "that's true, until he opens the door."

> BY DEFENSE COUNSEL: No. I mean, it's just not admissible, any conduct with someone else. I mean, you've permitted him [the prosecutor] to go into whatever took place with this person, but he [the prosecutor] cannot go into it, Your Honor, and he just can't go into anything with anybody else. There is no evidence of any prior convictions and he just can't go into some third party. I mean, he just cannot do it, and he knows he can't.

¶13. The court then allowed the State to cross-examine Nicholson about C.D.[(2)] The State does not offer any authority for being allowed to do so, and Nicholson submits that under *Elmore v. State*, 510 So. 2d 127 (Miss. 1987), and *Mitchell v. State*, 539 So. 2d 127 (Miss. 1989), such testimony is inadmissible. The trial court further allowed the State to call C.D. to testify as a rebuttal witness. Nicholson's counsel put a continuing objection into the record.

> BY Mr. MAYO: In Order, Your Honor, that I won't run afoul, would you let the record show that I have a continuing objection to each question and answer that may be asked of this witness so I won't have to get up in front of the Jury again?

¶14. The Court of Appeals held concerning this issue on appeal: "The other alleged victim's testimony [C.D.] regarding her should not have been permitted." COA op. at 5. The Court of Appeals went on to note that the State had argued that the evidence was admissible as general impeachment, and stated that pursuant to this Court's holding in *Jackson v. State*, 645 So. 2d 921, 923 (Miss. 1994), attempts to impeach the witness could only be done through cross-examination, not by "extrinsic evidence." *Id.* at 923-24. The Court of Appeals then held, "We reject this alleged error because it was not properly preserved [for appeal]." This statement is incorrect in light of a careful review of the record, and the standing objection read into the record by Nicholson's attorney.

**Nicholson's Argument**

¶15. Nicholson, on more than one occasion, while objecting to the questioning of C.D., cited to *Elmore v. State*, 510 So. 2d 127 (Miss. 1987), and *Mitchell v. State*, 539 So. 2d 127 (Miss. 1989), and again cites the cases in the brief of the appellant in support of his argument that the lower court committed reversible error in allowing the highly prejudicial testimony by C.D. In *Elmore*, this Court held:

> "In the context of sexual crimes, however, we have long recognized a relaxation of that rule [prohibiting evidence of other crimes]. . . . [W]e have regarded that substantially similar acts *with the same person*, that is, sexual acts of the same general type as those charged in the indictment," are probative and admissible.

> *Coates*, 495 So. 2d at 468.

> Elmore is charged with committing sexual battery upon V.E. It is Elmore's alleged criminal act toward V.E. which the State attempted to prove. Any attempt by Elmore to commit sexual battery on the rest of his family, while arguably relevant, is far less probative and at least equally, if not more, prejudicial. *We hold that the admission of evidence of remote instances of sexual misconduct with someone other than the prosecutrix was reversible error.*

*Elmore*, 510 So. 2d at 131 (emphasis added).

¶16. Nicholson additionally cites *Mitchell v. State*, 539 So. 2d 1366, 1372 (Miss. 1989), in which this Court construed whether or not bad acts or wrongs toward children *other* than the victim were admissible.

> It should be emphasized that these cases specifically limited evidence of other sexual relations to those between the defendants and the particular victim. In this case, evidence was admitted on Mitchell exposing himself to children other than Shannon. The State would have this Court expand the holding in these cases to include testimony that shows a defendant's character of lustful behavior toward children in general, not just toward Shannon. Such expansion would not be consistent with the purposes of M.R.E. 404(b), nor consistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person.

> Therefore, we reverse and remand on this aspect of Mitchell's assignment of error, as well.

¶17. Nicholson argues that he was not charged in the indictment of a crime against C. D., only L.T.B., and urges the Court to affirm the holding of *Elmore* and *Mitchell* and to exclude the testimony of C.D. and to reverse on the basis of M.R.E. 404(b).

### The State's Argument

¶18. The State counters with the argument that the trial court was correct in finding that Nicholson's remarks fall within M.R.E. 404(a)(1) and opened the door to rebuttal testimony. M.R.E. 404(a)(1) states:

> (a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of Accused*. Evidence of a pertinent trait of his character *offered by an accused, or by the prosecutor to rebut same*.

(emphasis added).

¶19. The State argues that neither **Elmore** nor **Mitchell** involves rebuttal testimony, and that C.D.'s testimony would not have been admissible in the State's case-in-chief; nor did the State try to bring it in until Nicholson got on the stand and said "I've never done anything wrong to any child. I never have and I never will."

¶20. The State cites **Rowe v. State**, 562 So. 2d 121 (Miss. 1990) in support of its argument. In **Rowe**, the defendant was on trial for armed robbery. On re-direct he was asked the question, "Would you have hurt anyone to get money?" The defendant answered, "No sir." The trial court found that his answer opened the door to evidence of prior convictions. We affirmed, holding "The prosecution was properly allowed to challenge the truthfulness of Rowe's statement that he would not threaten anyone by showing that in the past he had done exactly what he said he would not do." **Rowe**, 562 So. 2d at 123. In upholding the trial court, this Court stated:

> The defendant in a criminal case may offer his good character to evidence the improbability of his doing the act charged. M.R.E. 404(a)(1); IA Wigmore, *Evidence* § 56 (Tillers rev. 1983). Rowe offered this evidence when he stated that he would not hurt anyone in order to obtain money. The prosecution may then offer evidence of a pertinent trait to rebut the same. M.R.E. 404(a)(1).

> The prosecution may not offer evidence of the accused's character *unless and until* the accused has raised the issue by by offering evidence of his good character. If and when the accused has raised the issue of his character, the prosecution may then offer evidence of the accused's bad character.

> The defendant does not put his character in issue by taking the stand as a witness, *If the defendant testifies as a witness, his credibility as a witness may be attacked*. A defendant's character is put in issue when he states that he has a good character or a good record, or when he otherwise offers evidence of good character.

> 1 *Wharton's Criminal Evidence* § 169 (1985) (emphasis added).

> . . . .

> Until Rowe testified that he would not hurt another to obtain money, the admissibility of evidence of prior crimes was subject to the limitations imposed by M.R.E. 609 and the case law interpreting that rule. However, when Rowe injected his character for peaceableness or violence into the trial, the prosecution was entitled to rebut Rowe's protestations that he was not prone to violence. The prosecution was properly allowed to challenge the truthfulness of Rowe's statement that he would not threaten anyone by showing that in the past he had done exactly what he said he would not do.

**Rowe**, 562 So. 2d at 123.[3]

¶21. The State argues that Nicholson's "I have never done anything wrong to any child" was in the same category as Rowe's testimony and the prosecutor was properly allowed to challenge the truthfulness of that statement. In *Rowe*, however, the defendant was impeached with evidence of the conviction for another crime, which is clearly contemplated by M.R.E. 609, and is therefore distinguishable. Specific acts and criminal convictions are not the same, nor are they treated in like manner by our rules. *See* M.R.E. 609 and *compare with* M.R.E. 806; M.R.E. 404(b).

¶22. Additionally, the State argued that the prosecution was allowed to challenge the ***truthfulness*** of Nicholson's statement by the use of rebuttal testimony on cross-examination. It this was the purpose of the State's rebuttal testimony, then clearly such testimony would be disallowed under M.R.E. 608.[(4)] In *Jackson v. State*, 645 So. 2d 921 (Miss. 1994), in which the State attempted to impeach a defense witness with extrinsic evidence of specific instances of that witness' conduct, this Court held:

> such attempts at impeachment are clearly forbidden by Rule 608(b). That rule *does provide for limited exploration of a witness' conduct, but on* cross-examination, *not on direct examination or by rebuttal testimony of a third party*.

*Id.* at 923-24 (emphasis added).

¶23. The State also cites *Stewart v. State*, 596 So. 2d 851 (Miss. 1992), in support of its argument. In addressing questions regarding the prosecutor's prerogative to impeach the accused's self-exculpatory testimony, first through cross-examining the accused and second, through offering extrinsic evidence, this Court held:

> Because the impeachment here went well beyond the scope of the door the accused admittedly opened, and had the substantial effect of placing him on trial for an offense more serious than that charged in the indictment, we reverse and remand.[(5)]

*Id.*

¶24. This Court also held:

> When an accused on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via *cross-examination,* and this is so though it would bring out that the accused may have committed another crime.

*Id.* at 853 (internal citations omitted).

¶25. In *Stewart*, that the prosecution questioned the defendant at length concerning the greater crime for which he had not been convicted, and additionally, the court allowed the prosecution to call a policeman to testify and impeach Stewart further on the points he denied, but which the prosecution should not have been allowed to explore in the first place, which this Court stated was "the ultimate in impeachment on a collateral issue." *Stewart* at 854. However, the Court also noted that since the door had been opened by Stewart, the State could *cross-examine* him on the other specific acts, although the State went too far, resulting in reversal. Once again, this was allowed on *cross-examination of the defendant*.

¶26. Additionally, Nicholson was asked on direct examination whether he had done certain things to

L.T.B. This was a very specific question. Nicholson denied that he had harmed L.T.B. and then added an unsolicited response that did not contain denial of any specific crime that warranted the allowance of rebuttal testimony of C.D. as to alleged specific acts and unindicted crimes. Further, Nicholson was indicted for sexual battery against L.T.B., and as this Court held in *Stewart*:

> Both before and since we promulgated the Mississippi Rules of Evidence, the general rule has been that the issue in a criminal prosecution is a function of the charge *laid in the indictment* and that evidence is admissible by reference as to whether it tends to establish or negate that charge. *See* M.R.E. 401 and 402: **Bolin v. State**, 489 So. 2d 1092 (Miss. 1986); **Crafton v. State**, 200 Miss. 10, 14, 26 So. 2d 347, 348 (1946). A *familiar exception to the rule is found in Rule 404(b), where evidence of other crimes, wrongs or bad acts may be admitted to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.*

*Stewart*, 596 So. 2d at 853 (emphasis added).

¶27. In **Blanks v. State**, 547 So. 2d 29, 30 (Miss. 1989), this Court held:

> [D]efendant's testimony on direct examination stating that he had never shot the gun before, that his mother had never given him any instruction, and that he knew he was not supposed to handle the gun did not open the door to cross-examination about a past incident in which he had waived the pistol and threatened to shoot another friend, and evidence of such incident was inadmissible evidence of another wrong. M.R.E., Rule 404(b).

This analysis leads directly back to **Mitchell**, *supra*, and supports Nicholson's argument rather than the State's argument.

¶28. In **Mitchell**, the defendant was charged with fondling a five year old girl, and the court allowed testimony concerning an alleged incident involving another child not charged in the indictment. In reversing, this Court held:

> Furthermore, the testimony is evidence of other bad acts or wrongs, and is controlled by M.R.E. 404(b), which provides:
>
> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> The State urges that this testimony was admissible to show the system of criminal action and lustful disposition of Mitchell toward children, citing **Hicks v. State**, 441 So. 2d 1359 (Miss. 1983). **Hicks** synthesizes this Court's previous holdings in **Otis v. State**, 418 So. 2d 65 (Miss. 1982), **Speagle v. State**, 390 So. 2d 990 (Miss. 1980), **Davis v. State**, 367 So. 2d 445 (Miss. 1971). . . . It should be emphasized that these cases *specifically limited evidence of other sexual relations to those between the defendant and the particular victim*. In this case, evidence was admitted of Mitchell exposing himself to children other than Shannon. The State would have this Court expand the holding in these cases to include testimony that shows a defendant's

character of lustful behavior toward children in general, not just toward Shannon. Such an expansion would not be consistent with the purposes of M.R.E. 404(b), *nor consistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person.*

*Mitchell*, 539 So. 2d at 1372 (emphasis added).

¶29. Once again, we must note that Nicholson is not putting forth a "pertinent character trait, " but is issuing a denial. *Hosford v. State*, 525 So. 2d 789 (1988), also cited by the State adds another important element to this analysis. The State acknowledges under *Hosford*, that the prosecution cannot bring out information in cross-examination and then introduce additional information to rebut it, and argues that this did not happen in the present case because Nicholson on his own announced to the jury, in responding to counsel's question, "I didn't touch this child. . . I've never done anything wrong to any child. . . . "

¶30. A review of *Hosford* would appear to support Nicholson's arguments, rather those of the State. In *Hosford*, this Court reversed because the defendant, who was charged with felonious sexual penetration of a child under twelve years of age, was questioned on cross-examination about deviant sexual acts with his own stepchildren. The Court additionally noted there was no evidentiary basis for such questioning.

¶31. In *Hosford* we held:

> We first note that the State was obligated to present all relevant evidence bearing upon Hosford's guilt as part of its case in chief, not initially through cross-examination of the defendant and his witness, and then offering evidence of such conduct in rebuttal.

*Id.* at 791.

¶32. This Court continued:

> Turning to the state's cross-examination of Hosford about acts of deviant, sexual conduct with his stepchildren, we again note that if the State had possessed *any evidence of such misconduct* and deemed it relevant to the issue of his guilt, it was under a duty to make a profert of it as part of its case in chief.

*Id.* at 792 (emphasis added).

¶33. We should note that the State claims that C.D.'s testimony was offered in rebuttal only after Nicholson "opened the door." Yet, the State swore C.D. in as a witness *prior* to the beginning of trial, while not disclosing her name as a possible or probable witness in pretrial discovery, and the State did not attempt to question her in its case in chief concerning whether or not Nicholson may have dropped her off after softball practice prior to dropping of L.T.B., even though her home was logically located before L.T.B.'s, as was solicited from another teammate of L.T.B., or like questions. All of the above suggests an intent to ambush Nicholson with testimony that was not admissible in its case in chief, by bringing in such testimony on rebuttal. *See Johnson v. State*, 491 So. 2d 834; *Tolbert v. State*, 441 So. 2d 1374 (Miss. 1983). Further, such testimony was inadmissible pursuant to M.R.E. 403, as being more prejudicial than probative while injecting a collateral issue into the case.

*See* **Hannah v. State**, 336 So. 2d 1317 (Miss. 1976), cert. denied, 429 U.S. 1101 (1977).

¶34. The Comment to M.R.E. 608 states in pertinent part that:

> Rule 608 is concerned with character evidence of witnesses. Rule 404(a) prohibits the use of character evidence to prove conformity of conduct, but with some exceptions. Rule 608 addresses those exceptions. Thus, it is necessary to read both rules together.

¶35. The State's assertions that the rebuttal testimony of C.D. should have been allowed to impeach Nicholson's truthfulness would fall under the authority of M.R.E. 608 and the testimony is prohibited under the authority of **Jackson v. State**, 645 So. 2d 921 (Miss. 1994)(Under rule prohibiting proof of specific instances of conduct by extrinsic evidence for impeachment purposes State could have impeached alibi witness only by questioning him on *cross-examination*).

¶36. The better analysis falls under M.R.E. 404(b), as M.R.E. 608(b) relates only to the character trait of truthfulness. Under M.R.E. 404(a), certain *cross-examination* of Nicholson would have been proper *if* being used to rebut "evidence of a person's character offered by the accused." Pursuant to M.R.E. 404(b), evidence of "other wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In other words, M.R.E. 405 provides that specific instances of conduct may be offered only where character is an essential element of the charge, claim, or defense, which is not the case here. Moreover, allowing evidence such as this where there has been no admission or conviction is likely to produce undue delay and is likely to mislead the jury as to its relative importance to the issue actually being tried and should therefore be excluded under M.R.E. 403. This is especially so where the so-called "character evidence" that is being rebutted is only a general denial that the accused harms children. Further, the State cites **Rowe** and **Stewart**, in support of its argument, both of which are clearly distinguishable. In **Rowe**, evidence of a previous conviction as contemplated under M.R.E. 609 was allowed into evidence. There was no previous conviction in the present case, and there was no indictment as relating to C.D. Alleged activity relating to C.D. was extraneous to the charge of sexual battery allegedly perpetrated upon L.T.B., the case being tried.

¶37. In **Stewart**, the defendant denied having seen rock cocaine except on television--he was being tried for possession of one rock of cocaine. The prosecution introduced evidence that the defendant had possessed thirteen rocks while in jail at an earlier time and had attempted to pass them to his mother. This Court, in reversing, held that the defendant's statement opened the door to allow prosecution on *cross-examination* to establish that the defendant had *seen* rock cocaine on an earlier date. Testimony as to the specific instance was not admissible. This is a far cry from allowing a third person to testify on rebuttal as to specific acts. And it should be added, the lower court then denied surrebuttal as requested by Nicholson.

¶38. The admission of evidence of alleged sexual acts with a third party not contained in the indictment, over objection of the defendant constituted reversible error, and we reverse and remand for a new trial on this issue.

## II.

**The lower court erred in denying surrebuttal testimony by Nicholson.**

¶39. Because we have found that C. D. should not have been allowed to testify as a rebuttal witness this issue becomes moot, and will not be discussed.

### IV. The State Failed to provide Proper Rule 4.06 Discovery

¶40. Nicholson argues that the State erroneously failed to "disclose, discover, or call during direct, Witness C.D." Nicholson cites *Parker v. State*, 691 So.2d 409 (Miss. 1997), for the proposition that one cannot circumvent discovery rules by withholding a witness from the case-in-chief, and allowing the witness to testify on rebuttal.

¶41. The State conceded that C.D.'s testimony was not admissible during the State's case-in chief. The State's entire argument is based on the fact that C.D could not testify until and after Nicholson "opened the door," and added that even if the information was brought out on cross-examination[6] under *Hosford*, the prosecutor cannot bring out information in cross-examination and then introduce additional information to rebut it. However, the State *could* have had C.D. testify during its case-in-chief, as did another teammate of L.T.B. that Nicholson had taken them home and put everyone out before L.T.B., and had passed L.T.B.'s house on his way to taking other children home before dropping her off. The State *could* have indicted Nicholson for fondling C.D. Obviously, the State did not feel it had sufficient evidence to indict Nicholson for any alleged acts against C.D., so they attempted to get this information in through the back door, so to speak, by attempting to impeach Nicholson with testimony concerning specific instances of conduct, or misconduct, with C.D. on rebuttal. This is not permitted according to our established case law and rules.

¶42. The State argues that the Uniform Rules of the Circuit Court do not require the State to furnish names of rebuttal witnesses. Our case law mandates otherwise. If C.D.'s testimony had been admissible on rebuttal, the State would have been required to disclose her name during discovery. This Court held in *Johnson*, 491 So. 2d at 836-37 *citing Tolbert*:

> In *Tolbert v. State*, 441 So. 2d 1374 (Miss. 1983), the court addressed the narrow question of whether the fact that statements made by the defendant in a criminal case were reserved for rebuttal removed them from the scope of a discovery order. We held,

> Under our holding in *Jackson v. State*, 426 So. 2d 405 (Miss. 1983); and *Morris v. State*, 436 So. 2d 1381 (Miss. 1983), there is no distinction in an incriminating statement being offered by the state's case in chief, or reserving it for rebuttal, the accused is nevertheless entitled to discovery so as not to be caught by surprise at trial . . . .

> 441 So. 2d at 1375.

> We went on to hold that after a court has entered a discovery order it must be complied with in some meaningful way. We are therefore required to reverse and remand this case for a new trial because of non-compliance with Circuit Court Rule 4.06.

*Id. See also Coats*, 495 So. 2d at 467("In recent decisions we have been loathe to allow the prosecution to circumvent our discovery rules by pleas that the evidence was used for impeachment purposes. *See Johnson*, 491 So. 2d at 836-37; *Tolbert*, 441 So. 2d at 1375").

¶43. This Court continued in *Coats*:

> The practice of trial by ambush, however savored by the skillful advocate, has long since been discredited. . . . It is a purposeful effort to achieve justice, its possibilities of success enhanced in no small measure by a fidelity to procedural fairness. It is in this context that this Court has been required time after time in recent years to reverse criminal convictions because at trial the prosecution was allowed to use evidence which in discovery it was obligated to disclose to the defense but for whatever reason withheld. *See e.g.*, ***Henry v. State***, 484 So. 2d 1012, 1013-14 Miss. 1986); ***McKinney v. State***, 482 So. 2d 1129 (Miss. 1986); ***Box v. State***, 437 So. 2d 19, 21 (Miss. 1983); ***Morris v. State***, 436 So. 2d 1381, 1385-87 (Miss. 1983).

*Coats*, 495 So. 2d at 467.

¶44. Thus, C.D. should not have been allowed to testify on rebuttal, but if such testimony would have been admissible, her name should have been disclosed in discovery. The failure to comply with Circuit Court Rule 4.06 would constitute reversible error if this situation arises again.

¶45. **REVERSED AND REMANDED TO THE CIRCUIT COURT OF WINSTON COUNTY FOR A NEW TRIAL.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND SMITH, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**

1. The prosecuting witness did not undergo a medical examination, nor was her testimony corroborated by any other witness. Nellie Nathan, director of the Summer Program, testified that about sixty-five people were on the bus trip June 23, 1993, to DeKalb, Mississippi, and the lights were on in the bus. The defendant denied sexual contact with L.T.B.

2. It should be noted that although Nicholson was indicted for the sexual battery of L.T.B., there was no indictment or charge concerning C.D. M.R.E. 403 states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time. . . .

The Comment to the Rule states in pertinent part that "[s]uch a rule also keeps collateral issues from being injected into the case." ***Hannah v. State***, 336 So. 2d 1317 (Miss. 1976), cert. denied, 429 U.S. 1101 (1977).

3. It is important to note that this case dealt with M.R.E. 404(a)(1) and M.R.E. 609, IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME. We should recall that Nicholson was not convicted of another crime, but rather that the evidence offered was of an act with a third person--C.D. Our caselaw makes this distinction relevant.

4. M.R.E. 608(b) states:

**(b) Specific instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, *may not be proved by extrinsic evidence.*

5. The defendant denied having seen rock cocaine except on television (he was being tried for possession of one rock of cocaine). The prosecution introduced evidence that the defendant had possessed thirteen rocks while in jail at earlier time and had attempted to pass them to his mother. This Court held that the defendant's statement simply allowed the prosecution to establish that the defendant had seen rock cocaine on an earlier date.

6. On cross-examination Nicholson denied doing certain specific acts with C.D. The State bases its argument on the statement Nicholson made on direct when asked whether he committed the acts on L.T.B for which he was accused. Nicholson denied the charges and stated that he had not done anything wrong to any child.