596 So.2d 851 (1992)
Daryl STEWART
v.
STATE of Mississippi.
No. 90-KA-0754.
Supreme Court of Mississippi.
March 11, 1992.
Rabun Jones, Gaines S. Dyer, Dyer Dyer Dyer & Jones, Greenville, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal presents nice questions regarding the prosecution's prerogative to impeach the accused's self-exculpatory testimony, first, through cross-examining the accused and, second, through offering extrinsic evidence. The problem becomes acute when the impeachment delves into the area of other crimes for which the accused is not on trial. Because the impeachment here went well beyond the scope of the door the accused admittedly opened, and had the substantial effect of placing him on trial for an offense more serious than that charged in the indictment, we reverse and remand.

II.
In the Autumn of 1989, suspected felon Dale Bell worked as an undercover, contingent fee, confidential informant for the Indianola Police Department.[1] On the afternoon of December 9, 1989, Bell was working Church Street in Indianola when, by chance, he noticed twenty-year-old Daryl Stewart sitting on a bench and approached him. According to Bell, he asked, "Have you got it?" to which Stewart replied, "Yea." Bell says he then handed Stewart a marked twenty dollar bill, and Stewart retrieved a single cocaine rock from a Skoal container and handed it to Bell.
In due course, the grand jury of Sunflower County returned an indictment charging Stewart with the felonious sale of "a quantity of cocaine, a Schedule II controlled substance, to Dale Bell for twenty dollars." Miss. Code Ann. § 41-29-115(A)(a)(4) and -139(a)(1) (Supp. 1989). The case was called for trial on June 15, 1990, whereupon Bell testified rather straightforwardly and described the facts and circumstances of the *852 sale. In due course, the jury found Stewart guilty, and the Circuit Court sentenced him to thirty years imprisonment in custody of the Mississippi Department of Corrections, with the final five years suspended. The Court further ordered that Stewart pay a fine of $10,000.00 plus all costs of court. Miss. Code Ann. § 41-29-139(b)(1) (Supp. 1989).
Stewart appeals his conviction and sentence.

III.

A.
No question appears regarding the sufficiency or weight of the evidence. Rather, Stewart centers his appeal on the fact that, under the guise of impeachment, the prosecution substantially proved that on August 22, 1989  some three and a half months prior to the charge at issue  Stewart, while under arrest and in the custody of the Indianola Police Department, possessed thirteen rocks of cocaine and that he sought to conceal these from the police by stuffing them down his mother's shirt. Our critical concern is that the Circuit Court allowed far-ranging and impermissible impeachment of Stewart himself regarding this other incident.

B.
The testimony of Stewart's first witness, his mother, Rosie Stewart, sets the stage. Defense counsel's directed examination of Mrs. Stewart consumes less than two pages of the transcript before us and addresses but a single point, to-wit: that on six occasions she listened to a tape recording said to have been made by confidential informant Dale Bell on the occasion of the sale in question, and that she did not recognize her son's voice on the tape. On cross-examination, the prosecuting attorney touched on this issue and then pursued the familiar and permissible line, that Mrs. Stewart was not exactly an impartial witness and that she would try to help her son if she could. See Rule 611(b), Miss.R.Ev. The witness admitted that she would, although, when asked "and you would help him out in committing a crime, wouldn't you?" answered "No." The prosecution pressed the point and asked, "Isn't it true, Mrs. Stewart, that you would hide evidence from the police for him?" This led to a line of questioning which planted before the jury the idea that on August 22, 1989, at the Indianola police station, Stewart gave his mother a package, that "your son stuffed a package in your shirt in the Indianola Police Department?" and that "you also gave the police ... a statement admitting your son had done that on that day?"
Mrs. Stewart persisted in her denials and in response, the prosecution warned her of the penalty for perjury and, indeed, in the presence of the jury the Circuit Court stated:
All right, Mrs. Stewart, the District Attorney is implying that you may be on the verge of committing perjury. You are under oath and should you commit perjury, it is a crime for which you could be sent to the penitentiary. Because that accusation has been made, you would have a right to invoke your Fifth Amendment Rights of not testifying in that you could tend to incriminate yourself. Should you answer the questions, anything you say could be used against you as a subsequent charge of perjury. Do you understand that?[[2]]
Yes, I do.
The Court thereafter retired to chambers and allowed Mrs. Stewart the opportunity to consult with counsel. In the end, the witness claimed her privilege against self-incrimination, which the Court allowed, and stated to the jury:

*853 Ladies and gentlemen, pursuant to the Court's admonition, Mrs. Stewart has chosen not to testify any further; therefore, the Court instructs you to disregard all of her testimony in this case.
Immediately thereafter, the accused, Daryl Stewart, took the witness stand. On direct examination, Stewart denied all. Inexplicably, as direct examination drew to a close, Stewart's counsel elicited the following colloquy:
One last question. Have you ever sold, not only to Dale Bell, but have you ever sold any crack cocaine to anybody?
No, sir.
Do you even know what it looks like?
Yes, sir.
How do you know what it looks like?
Publicity from T.V. screens.
That's the only knowledge you have?
Yes, sir.
On cross-examination the prosecuting attorney promptly pounced on the point, whereupon Stewart reiterated that he had never seen crack cocaine other than on television, "the newscasts, something like that." The prosecuting attorney then directed Stewart's attention to the August 22, 1989, incident and asked whether or not on that date he had "had an occasion to see some crack cocaine." Stewart then admitted that he had, that "Levi Ford had it"  without saying who Levi Ford was. Over defense objection, the prosecution was then allowed to question Stewart about the fact that he had seen the cocaine on that day "in a clear plastic bag," that in fact he had in his "possession on that day," and that in fact he handed the cocaine to his mother. Stewart denied these facts, whereupon the prosecution, on rebuttal, called Levi Ford, an officer of the Indianola Police Department, and through Ford proved that on August 22, 1989, Stewart had in his possession thirteen rocks of cocaine, and that he sought to secrete these from the police by handing them to his mother.
Both before and since we promulgated the Mississippi Rules of Evidence, the general rule has been that the issue in a criminal prosecution is a function of the charge laid in the indictment and that evidence is admissible by reference to whether it tends to establish or negate that charge. See Rules 401 and 402, Miss.R.Ev.; Bolin v. State, 489 So.2d 1091, 1092 (Miss. 1986); Crafton v. State, 200 Miss. 10, 14, 26 So.2d 347, 348 (1946). A familiar exception to the rule is found in Rule 404(b), Miss.R.Ev., where evidence of other crimes, wrongs or bad acts may be admitted to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
A further exception is more circumspect. Where an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed another crime. For example, in Quinn v. State, 479 So.2d 706 (Miss. 1986), the accused, on trial for sale of marijuana, denied that he had ever sold marijuana to anyone. The Court held that by this sweeping statement, the accused had "opened the door" and that the prosecution was entitled to show another sale of marijuana the accused had made some four days prior to the offense charged in the indictment. We held this testimony "not admissible to establish the truth of those facts," but allowable "for purposes of impeaching Quinn's credibility." Quinn v. State, 479 So.2d at 708. See also, Pierce v. State, 401 So.2d 730, 732-33 (Miss. 1981).
By way of contrast, the prosecution's impeachment privilege may not exceed the invitation extended. Blanks v. State, 547 So.2d 29 (Miss. 1989), presents the point in a setting quite analogous to today's. Blanks was on trial for murder, and on direct examination, he said he had never fired the alleged murder weapon. On cross-examination, the prosecuting attorney asked about a prior instance in which the accused was said to have quarreled with a friend and in which he "had gotten the pistol out, waved it and threatened to shoot ... [the friend]." Blanks, 547 So.2d at 37. The Court condemned this line of inquiry on grounds it impermissibly exceeded the scope of direct examination. *854 Because the cross-examination sought to impeach  rather than elicit relevant admissible testimony  the prosecution's scope was limited to what was said on direct.
At the very outside, the most the state should have been permitted to ask him was whether or not on a previous occasion he had handled the weapon in the presence of Lemon. And stop there.
Blanks v. State, 547 So.2d at 37. The Court found the cross-examination substantially prejudicial to Blanks' right to a fair trial and reversed.
In the case at bar, Stewart denied that he had ever seen cocaine, except on television. Without doubt, the prosecution was entitled to challenge this statement by showing that Stewart had in fact seen cocaine on August 22, 1989, and, if that fact alone infer illegal activity, so be it. Quinn v. State, 479 So.2d at 707-09; Pierce v. State, 401 So.2d at 732-33. Nothing in Blanks questions this view. The problem is that the Circuit Court should have stopped the prosecution right there, as Blanks emphatically holds. Instead, over persistent defense objection, the prosecution was allowed to question Stewart about his alleged possession of the cocaine on August 22, about his attempted concealment of the cocaine on his mother's person, and about the fact that all of this took place at the Indianola Police Department. Moreover, when Stewart did not admit to all of this, the prosecution was allowed to call Levi Ford of the Indianola Police Department and impeach Stewart further on the points he denied but which the prosecution should not have been allowed to explore in the first place. This was the ultimate in impeachment on a collateral issue. See, e.g., White v. State, 532 So.2d 1207, 1217 (Miss. 1988); Whitley v. State, 511 So.2d 929, 932 (Miss. 1987).[3]
Stepping back from the fray, we see the substantial effect of what took place. This is no case of a mere question or two going beyond the scope of what is permitted. Beginning with the testimony of Stewart's mother  heard by the jury, even though it was stricken  through and including the impeachment cross-examination of the accused and the rebuttal testimony of Levi Ford, the prosecution substantially charged and sought to prove that on August 22, 1989, Stewart illegally possessed and sought to secrete thirteen rocks of cocaine. As the Circuit Court stated when the problem began:
... I think he's opened the door himself and she can drive the truck through it, it's just how big a truck I'm going to let through the door.
From what has been said, and particularly in view of our decision in Blanks, we think the Court "let through the door" a truck far larger than the law allows.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and BANKS, JJ., concur.
McRAE, J., dissents without written opinion.
PITTMAN, J., not participating.
NOTES
[1] See Gibson v. State, 580 So.2d 739, 740 (Miss. 1991).
[2] Stewart complains of this course of proceedings on appeal. We address it only for the light it sheds on the principal issue we consider. Without question, under such circumstances it may be appropriate that the circuit court advise a witness of the penalties for perjury and of his or her Fifth Amendment rights. See Hutchins v. State, 212 Miss. 145, 151, 54 So.2d 210, 211 (1951). On the other hand, this course should almost never be pursued in the presence of the jury. See United States v. Reed, 421 F.2d 190 (5th Cir.1970). Suffice it to say that the potential for prejudice when such a course occurs before the jury is enormous.
[3] We are aware of substantial criticism of the collateral issue rule and of proposals that it be replaced by a balancing analysis between probative value and prejudicial effect under Rule 403, Miss.R.Ev. 3 Weinstein's Evidence ¶ 608[05] at pp. 608-23 to 608-24 (1990). Nothing today requires that we finally resolve whether we will pretermit the traditional view.