# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01135-SCT

*ROMIKA PERKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/20/2001 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAY T. PRICE |
| | JOHN D. SMALLWOOD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND REMANDED IN PART WITH INSTRUCTIONS TO MODIFY SENTENCING IN COUNTS III-VIII TO 30 YEARS IN EACH COUNT - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a jury verdict in the Circuit Court of Warren County, Mississippi. The jury convicted Romika Perkins (Perkins) of aggravated assault, two counts of armed robbery, rape, and six counts of kidnaping. He was ultimately sentenced to 35 years on count I of the indictment (armed robbery), 35 years on each count II of the indictment (armed robbery), 35 years on counts III-VIII of the indictment

(kidnaping), 20 years on count IX (aggravated assault) and a life sentence on count X of the indictment (rape). All sentences to run consecutively. Aggrieved by the convictions and sentences, Perkins filed a motion for J.N.O.V. or in the alternative for a new trial which was denied by the trial court. Perkins appeals and raises seven issues:

I.      Whether the trial court erred in failing to suppress statements and evidence obtained without probable cause, without a valid search warrant and in violation of Perkins's federal and state constitutional rights;

II.     Whether Miss. Code Ann. § 97-3-53 is unconstitutionally vague and ambiguous in violation of the First and Fourteenth Amendments to the United States Constitution;

III.    Whether the trial court erred in failing to enter a directed verdict in favor of Perkins as to three counts of kidnaping as they relate to the minor children under ten.

IV.     Whether the trial court erred in sentencing Perkins to 35 years for each count of kidnaping as the maximum sentence allowed under Miss. Code § 97-3-53 is 30 years.

V.      Whether the trial court erred in failing to enter a directed verdict or JNOV as to count IX of the indictment as it relates to Romiko Perkins as the State failed to prove the elements of aggravated assault as alleged.

VI.     Whether the trial court committed error in allowing in-court identification of Perkins by victims.

VII.    Whether the trial court committed cumulative error in the voir dire process.

Perkins also raises the issue of ineffective assistance of counsel in his supplemental brief.

**FACTS**

¶2.     In July of 1999, the adult female victim and her four children, ages three months to fourteen years, went to look at a house that they were interested in purchasing. The victim and her husband were looking for a larger home and found an ad in the newspaper describing a home in Vicksburg, Mississippi. The

2

victim called Mr. Triplett ("Triplett"), the owner of the home, and set up an appointment to view the home. The victim's husband, who works the night shift, did not accompany his wife and children to the home.

¶3.     The victim and her four children arrived at the home at the designated time and exited their vehicle. The victim was carrying her three month-old child in a car seat when they approached the home. The victim saw a white car in the driveway and assumed it belonged to the owner of the home. She and her children were met in the driveway by two men, Romika Perkins ("Perkins") and Darren Warren ("Warren"). The men had been out drinking the night before and slept in the house, believing it to be abandoned. When Perkins and Warren heard the car approaching, they armed themselves. Perkins had a handgun, and Warren had an aluminum baseball bat. Perkins put on a ski mask, and Warren covered his face with panty hose.

¶4.     The victim and her children were met by Perkins and Warren and were told to get down on the ground. In the meanwhile, Triplett arrived and drove down the driveway, and the victim and her children were all forced into the house and ordered to get into a closet while Perkins and Warren lay in wait for Triplett. Triplett entered the home and was surprised by the two men who immediately demanded his wallet. Triplett complied and was hit in the head with the baseball bat, knocking him unconscious. The two men then tied him up with cords that they found in the house.

¶5.     The men took the victim out of the closet and showed her Triplett, who was lying on the floor bleeding and unconscious, telling her that if she did not cooperate that the same thing would happen to her. While the victim was in the closet with her children, she could hear the men beating Triplett so she removed her jewelry and placed it by the door in hope that the men would take it and not hurt her or her children. The men then forced the victim to get her purse from her vehicle and give them her cash, ATM card and PIN number.

¶6.     Perkins took the victim to a small room upstairs, leaving the children locked in the closet and Warren to "watch" Triplett. While inside this room, Perkins forced the victim to remove her clothing, placed her shirt over her face, and raped her. After the rape, the victim lost control of her bodily functions. She was then ordered to put her clothes back on and was taken back downstairs where Warren was located. After realizing that the victim had lost control of her bodily functions, Warren ordered the victim to "clean herself up." She did so and was then ordered to remove all of her clothing once again. After she removed her clothing, Warren put her clothing in the toilet to prevent her from escaping. Once she was again naked, she was forced to perform oral sex on Warren.

¶7.     After performing oral sex on Warren, the victim, not knowing that her clothing had been put in the toilet, asked if she could put her clothes back on but was forced to remain naked. The two men then brought her fourteen year old son into the room, where his mother remained unclothed, and tied the two together with computer wire and cords from the window blinds. The two men covered the victim and her son with a sheet and left the room.

¶8.     During the time the victim was being raped, Triplett regained consciousness periodically, and each time he tried to come to the victim's assistance, he was again hit or kicked in the head. Finally, Perkins and Warren left the house, promising to return if the PIN number given by the victim was incorrect.

¶9.     Although he was still disoriented, Triplett was able to get free, and the victim's fourteen year old son was able to get the wires loose enough to slip out of the confinement. The victim then cut herself free using a pair of fingernail clippers that she had in her purse. She covered herself with the sheet that had been draped over her and her son, got her three other children out of the closet, and exited the home. The victim's fourteen year old son ran to the minivan and discovered that the keys were still in the van. The victim and her children got in the van and drove down the driveway to pick up Triplett, who was still very

disoriented and who was walking to the neighbor's house to get help. The victim's fourteen year old son drove the victims to the emergency room for help.

¶10.    Perkins and Warren used the ATM card in three different places, two of which captured the image of the perpetrator on video. One video from Mutual Credit Union showed the user as a person wearing a distinctive pair of sunglasses. The perpetrators were stopped the following afternoon by an officer who recognized the white Pontiac Grand Am from the description that was given to the police by the victims. When he stopped the car, he recognized that one of the men in the car was wearing what looked like the same sunglasses that had been recorded on the video at the ATM machine. The wearer of the sunglasses was Perkins, and when the vehicle was searched, a baseball bat was found in the trunk. The blood stains on the bat were tested and proved to be that of Triplett. Perkins confessed to the crimes and told the officers that the two had used the ATM card and divided the money. The two men stayed at a Scottish Inn, the night of the crime, and the victim's jewelry, ATM card and Triplett's credit cards were recovered from the room.

## DISCUSSION

I.    WHETHER THE TRIAL JUDGE ERRED IN FAILING TO SUPPRESS STATEMENTS AND EVIDENCE OBTAINED WITHOUT PROBABLE CAUSE, WITHOUT A VALID SEARCH WARRANT AND IN VIOLATION OF PERKINS'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS.

¶11.    Perkins asserts that the trial judge erred by admitting evidence obtained from the white Pontiac Grand Am without a warrant for Perkins's arrest. Perkins claims that the stop of the vehicle was an "investigatory stop" and that Perkins was placed in custody as a result. He further claims that the stop was illegal and that the evidence obtained from the car and his subsequent confession to the crimes that

followed should have consequently been suppressed. These same arguments were raised at trial and were denied by order of the trial judge.

¶12.    A traffic stop was made by a Vicksburg police officer on the day following the crimes. As a result of the stop, Perkins was handcuffed and placed in "investigative custody." Perkins was then detained for the purpose of identification. Perkins claims that the officer had no reason to stop and/or arrest him and that all evidence obtained as a result of that stop and arrest should have been excluded by the trial court.

¶13.    The admission of evidence is governed by the trial court, and its decision will not be reversed unless an abuse of discretion occurred. *Gray v. State,* 728 So. 2d. 36, 56 (Miss. 1998). Perkins sought to exclude all statements and physical evidence obtained as a result of his stop and arrest. Following the suppression hearing, the trial judge reviewed the testimony, the videotapes and other evidence and that the stop and arrest of Perkins was based on probable cause.

> An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a felony has been committed, and he has **reasonable ground to suspect and believe the person proposed to be arrested to have committed it;** or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrest without a warrant, the person making such arrest must inform the accused the object and cause of the arrest, except when he is in actual commission of the offense, or is arrested on pursuit.

Miss. Code Ann. § 99-3-7(1) (Rev. 2000) (emphasis added).

¶14.    We find that the stop and arrest were legal for several reasons: (1) The arresting officer stated that he knew that multiple crimes had been committed; (2) the officer had previously reviewed a composite videotape showing a man wearing a distinctive pair of "thick gold" glasses and using one of the victim's ATM cards; (3) the officer stated that he was given a description of the white Pontiac Grand Am; and

6

(4) the officer knew that the victims had described their assailants as having "sideburns and scruffy facial hair."

¶15. The officer knew that the perpetrators were armed and dangerous, thus, when he stopped the vehicle that matched the description given by the victims, he detained the suspect until help arrived. The officer further stated that he recognized the driver as the person he had seen on the bank videotape. The officer had a reasonable belief that a crime had been committed and that the person he had stopped may have committed that crime. *See Haddox v. State*, 636 So.2d 1229, 1233 (Miss. 1994); *Bevill v. State*, 556 So.2d 699, 709 (Miss. 1990) (reasonable belief to stop and take into custody for questioning). Because the traffic stop and arrest were legal, any evidence seized as a result was admissible as determined by the trial judge.

¶16. Perkins also argues that the means by which the Vicksburg Police Department obtained the search warrant for Perkins's vehicle were illegal. Perkins argues that the affidavit used to obtain the warrant contained fraudulent statements. The affidavit contained a description of the vehicle driven by the suspects and stated that the "subject vehicle was stopped by an officer on a routine traffic stop" and that "the officer recognized the vehicle and the driver based on a previous description by the victims." Perkins claims that these statements are false and misleading.

¶17. The affidavit states that the vehicle was stopped by an officer on a routine traffic stop, however, it further states that the officer "recognized the vehicle and the driver based on a previous description by the victims." Thus, we find this argument to be without merit.

II. WHETHER MISS. CODE ANN. § 97-3-53 IS UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE MISSISSIPPI CONSTITUTION.

7

¶18.    Perkins argues that the use of the term "kidnaping" to define the criminal offense of kidnaping fails in Miss. Code Ann.§ 97-3-53 to provide any person with fair notice of what conduct is prohibited and as a result is unconstitutionally vague. That statute reads:

> Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will, or shall without lawful authority forcibly seize, inveigle or kidnap any child under the age of ten (10) years and secretly confine such child against the will of the parents or guardian or person having the lawful custody of such child, shall, upon conviction, be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the state penitentiary.
> This section shall not be held to repeal, modify or amend any other criminal statute of this statute.

Miss. Code Ann. § 97-3-53.

¶19.    This Court determined in *Cassibry v. State*, 404 So.2d 1360, 1368 (Miss. 1981), following *Roth v. United States* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957), that "the wording of a statute does not necessarily offend the requirements of due process as long as the language provides a 'sufficient warning as to the proscribed conduct when measured by common understanding and practices...'" *Id*. Perkins has failed to overcome the presumption that the statute is constitutional, particularly since other descriptive words, *e.g., inveigle*, are used in the definition of kidnaping, leaving Perkins well informed of the crime with which he was accused.

III.    WHETHER THE TRIAL COURT ERRED IN FAILING TO ENTER A DIRECTED VERDICT IN FAVOR OF PERKINS AS TO THREE COUNTS OF KIDNAPING AS THEY RELATE TO THE MINOR CHILDREN UNDER TEN.

¶20.    Perkins argues that the portion of § 97-3-53 pertaining to the kidnaping of children under the age of ten was absent from Counts VI, VII and VIII of the indictment and that this absence was reversible

8

error as to said counts. Perkins argues, in the alternative, that because the victim knew where her children were during the events of July 18, 1999, that they were not "secretly confined ... against the will of the parents."

¶21.    The indictment, while not repeating the statute verbatim, was sufficient to inform Perkins of the crimes with which he was accused. Although Counts VI, VII and VIII of the indictment did not repeat the statute verbatim, each count contains the number of the statute (97-3-53), which gave Perkins ample notice of the crimes with which he was charged. *See Gray v. State*, 728 So.2d at 70 (¶171).

¶22.    Perkins' argument that the children were not "secretly confined" is without merit. The victim certainly knew that her children were being held against her will and that they had been forced into a closet at gunpoint. The victims was later taken out of the closet and into another part of the house. She had no knowledge of where her children might have been when she was not physically with them. Furthermore, the father certainly had no knowledge that his family was held at gunpoint and that his children were forcibly held in the closet. He was at home and had no knowledge that his family was in danger or was confined, and if the oldest son had not broken the bonds of his wrists and ankles, all of the victims would have been held there without anyone's knowledge.

¶23.    Therefore we find these arguments are without merit and that the trial judge properly denied the motions for a directed verdict and JNOV as to these counts.

IV.    WHETHER THE TRIAL COURT ERRED IN SENTENCING PERKINS TO 35 YEARS FOR EACH COUNT OF KIDNAPING AS THE MAXIMUM SENTENCE ALLOWED UNDER MISS. CODE ANN. § 97-3-53 IS 30 YEARS.

¶24.    Perkins was charged with six counts of kidnaping. Each count alleges that he violated Miss. Code Ann. § 97-3-53. The jury found him guilty on each count but could not agree on a penalty of imprisonment.

As such, the penalty was affixed by the trial court which imposed a penalty of 35 years for each kidnaping count. This penalty is in excess of the maximum penalty allowed. The penalty provisions of Miss. Code Ann. § 97-3-53 read as follows: "shall, upon conviction, be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the state penitentiary."

¶25.    The jury could not agree on the penalty and although there was no objection in the record at trial, and the matter was not raised in the motion for a new trial, in sentencing Perkins to 35 years on each count of kidnaping, the trial court plainly exceeded its sentencing authority. Due to the fact that there was no objection at trial and the application of law is erroneous, this Court will take notice of plain error in the sentencing of Perkins on each of the kidnaping convictions to 35 years on each count when the statutory limitation of penalty is 30 years under Miss. Code Ann. § 97-3-53. *Watts v. State*, 733 So.2d 214, 233 (Miss. 1999) ("[t]he defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal.")

¶26.    We hold that the sentencing by the trial court on counts III-VIII be reversed and remanded with instructions to modify the sentences to 30 years per count to run consecutively with sentencing on all other counts.

> V.    WHETHER THE TRIAL COURT ERRED IN FAILING TO ENTER A DIRECTED VERDICT OR JNOV AS TO COUNT IX - AGGRAVATED ASSAULT - OF THE INDICTMENT AS IT RELATES TO ROMIKA PERKINS AS THE STATE FAILED TO PROVE THE ELEMENTS OF AGGRAVATED ASSAULT AS ALLEGED.

¶27. Perkins argues that the testimony given at trial does not support a charge or conviction of aggravated assault. Perkins asserts that during the attack on Triplett, the victim and her children were unable to see who was hitting whom and with what as she and her children remained in a closet.

¶28. Our standard for reviewing the legal sufficiency of the evidence, is:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence - not just that supporting the prosecution - in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts and the inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record such substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgement might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. *See e.g., Gavin v. State,* 473 So.2d 952, 956 (Miss. 1985); *May v. State,* 460 So.2d 778, 781 (Miss. 1984).

*Benson v. State*, 551 So.2d 188, 192-93 (Miss. 1989).

¶29. This Court has further held that it may reverse only where "with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." *Pinkney v. State*, 538 So.2d 329, 353 (Miss. 1988).

¶30. The State's evidence clearly showed that the victims of the robbery were put in fear of their lives by the exhibition of a deadly weapon. The perpetrators were armed with a gun and a baseball bat and in fact used the baseball bat on Triplett. Triplett was hit on the head with the bat to the extent that he was unconscious and later disoriented. He testified that "I was almost out, and then I remember in my dazed condition I took several kicks, which I believe most of them were coming from the guy with the gun" (Perkins). Triplett suffered severe bodily injury requiring medical

11

attention. The victim was forced to turn over her debit card and PIN number, was then raped, forced to perform oral sex and then threatened that if the PIN number was wrong the men would return to harm her and her children. Further, the victims and her son were tied together by telephone wire and cords from the mini-blinds.

¶31.    We find that the State put on sufficient evidence to warrant a charge and conviction for aggravated assault. Thus this argument is without merit.

> VI.    WHETHER THE TRIAL JUDGE COMMITTED ERROR IN ALLOWING IN-COURT IDENTIFICATION OF PERKINS BY VICTIMS.

¶32.    Perkins asserts that the trial court erred by admitting identification testimony from the victims.  He further asserts, by his reliance on *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), that the in-court identification was somehow impermissibly tainted by the pretrial identification. However, this reliance is misplaced. Perkins made no assertion at trial that the pretrial photo lineup shown to the victims had somehow impermissibly tainted the in-court identification. Perkins did not argue a cause/effect problem, he merely objected "[t]hat's an in-court identification. ... His representation is that this morning she couldn't identify him." The trial judge interpreted this affirmative statement as an objection and overruled the objection.

¶33.    It has long been held by this Court that an objection must be made with specificity in order to preserve it for appeal. *Oates v. State*, 421 So.2d 1025, 1030 (Miss. 1982). Perkins may have intended to show a causal connection by his remarks to the judge, but he did not make it clear at trial in order to preserve it.  Perkins cannot now argue new grounds for an objection on appeal. *Lester v. State*, 692 So.2d 755, 772 (Miss. 1997).

¶34. This proposition was not properly preserved at trial specifically in terms of pretrial identification having a deleterious effect on in-court identification, thus we decline to review this issue.

VII. WHETHER THE TRIAL COURT COMMITTED CUMULATIVE ERROR IN THE VOIR DIRE PROCESS.

¶35. Perkins asserts three sub-issues regarding cumulative error in the voir dire process. This Court will review the first "sub-issue" but as Perkins cites no supporting authority for his second and third "sub-issues" we will not review them. This Court determined in *Kelly v. State*, 553 So.2d 517, 521 (Miss. 1989), that "[w]e are under no obligation to consider assignments of error when no authority is cited." *See also Stewart v. State*, 596 So.2d 851 (Miss. 1992).

¶36. In voir dire Perkins challenged the State's reasons for his choice of jurors under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), as racially based. This Court addressed the parameters of a *Batson* claim in *Griffin v. State*, 607 So.2d 1197 (Miss. 1992), finding that a defendant must make a prima facie showing of purposeful racial discrimination in the selection process by the prosecution. The defense must show:

> (1) that he is a member of a racially cognizable group;
> (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, and;
> (3) that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of their races which is an inference of purposeful discrimination.

*Id.* at 1202 (citing *Batson,* 476 U.S. at 96).

¶37. In the case at bar, the trial court found that Perkins had made a prima facie *Batson* claim and required the State to present reasons for venire exclusions regarding five African-American

13

jurors who the State struck for cause. Specifically, jurors Baddie, Butler, Bridges, Hollis and "Juror No. 31."

¶38.    The reasons provided by the State for striking juror Baddie were that he lived in the same neighborhood as the defendant's aunt, that he had a prior criminal conviction in his family and that he stated that he had prior jury service that he did not like.  The reasons provided by the State for striking juror Butler were that he had a prior criminal conviction in his family, he stated in voir dire that he had served on a jury "two years ago in 1998" (this trial was held in April, 2001) and he fell asleep during voir dire. The reasons provided by the State for striking juror Bridges were that he personally knew and worked with the defendant's aunt. The reasons provided by the State for striking juror Hollis were that when the prosecution asked the question regarding whether or not anyone knew the defendant's family, he failed to give any response. But when defense counsel asked if anyone knew the defendant's family he stated that "yeah, he knew the family but he could be fair and impartial." The reasons provided by the State for striking juror No. 31 were that she also knew the Perkins family and stated that she "had problems with the police." She also had a family member with a criminal conviction.

¶39.    In the case at bar, Perkins was granted a change of venue from Warren County where the crimes were committed, to Lowndes County, Perkins's home county. Most of the challenges presented by the State arose out of familial relationships between members of the venire and Perkins's family.  Further, the State's justification need not rise to a level of a challenge for cause. *Benson v. State*, 551 So.2d at 192. At the beginning of jury selection the State accepted four African-Americans, one of whom was stricken by the defense. The reasons presented by the State were found by the trial judge to satisfy the standards of *Batson* as founded on racially neutral

14

reasoning. This Court finds that the trial court made no error in allowing the State to strike said five veniremen for cause.

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

¶40.     Perkins's final argument is one made by direct appeal alleging ineffective assistance of counsel. Perkins asserts that defense counsel failed to object to the admission of evidence and that defense counsel made a mistake by requesting severance without his knowledge.

¶41.     To establish ineffective assistance of counsel, Perkins must show that (1) his counsel's performance was deficient and (2) prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in *Stringer v. State*, 454 So.2d 468 (Miss. 1984). "The benchmark for judging any claim of ineffectiveness muse be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

¶42.     Perkins's allegation that counsel made mistakes during trial by requesting severance without his knowledge is without merit. Perkins provides nothing in his brief to support such an allegation. The trial court has the discretion to sever all cases except death penalty cases, and that discrimination would only rise to a level of abuse if the defense of one of the co-defendants tended to exculpate him at the expense of the other or if the balance of the evidence tilted more toward guilt of one co-defendant than the other. *Gossett v. State*, 660 So.2d 1285, 1289 (Miss.1995). If anything, the statement of Derrick Warren reveals that a severed trial was beneficial to Perkins, as Warren's statement only proved to further implicate Perkins in the charged crimes.

15

¶43.    Perkins's final argument is that defense counsel erred by failing to object to the admission of his statement made to the police. However, defense counsel did object to the admission of the statement and moved to suppress the statement arguing that it was illegally obtained. The trial judge heard all of the evidence, reviewed the videotape and denied the motion, finding that the statement was freely, voluntarily and intelligently given.

¶44.    Trial counsel filed numerous pretrial motions and argued diligently on behalf of Perkins. Considering the overwhelming weight of the evidence and totality of counsel's performance, Perkins has failed to overcome the presumption that counsel's performance was constitutionally effective under the *Strickland* standard. Given the foregoing, we find that this argument is without merit.

## CONCLUSION

¶45.    For the aforementioned reasons, we affirm the trial court's judgment except we reverse and remand in part with instructions to modify sentencing as follows: on counts III-VIII the sentence will be 30 years per count to run consecutively with sentencing on all other counts.

¶46.    **COUNT I : CONVICTION OF ARMED ROBBERY WITH A DEADLY WEAPON AND SENTENCE OF THIRTY-FIVE (35) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**COUNT II : CONVICTION OF ARMED ROBBERY WITH A DEADLY WEAPON AND SENTENCE OF THIRTY-FIVE (35) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

**COUNTS III-VIII: CONVICTION OF KIDNAPING FOR EACH COUNT, AFFIRMED.   REVERSED AND REMANDED WITH INSTRUCTIONS TO MODIFY THE SENTENCING IN COUNTS III-VIII TO THIRTY (30) YEARS FOR EACH COUNT AND TO RUN CONSECUTIVELY WITH ALL OTHER COUNTS.**

**COUNT IX: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**COUNT X: CONVICTION OF RAPE AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE OR EARLY RELEASE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. ALL SENTENCES SHALL RUN CONSECUTIVELY.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**