GRIFFIS, J.,
for the Court.
¶ 1. Anthony J. Thomas was convicted of Count I, aggravated assault, in violation of Mississippi Code Annotated section 97-3-7(2)(b) (Rev.2006), and Count II, felon in possession of a weapon, in violation of Mississippi Code Annotated section 97-87-5 (Rev.2006). Thomas was sentenced as a habitual offender to life imprisonment without eligibility for parole in the custody of the Mississippi Department of Corrections. On appeal, Thomas claims that the trial court erred by (1) permitting the prosecutor to inquire into the details of Thomas’s previous conviction for aggravated assault, (2) barring his inquiry into the drug and alcohol use of the victim, and (3) denying his motion to sever Counts I and II. Finding error as to issue one, we reverse the judgment of the trial court and remand this case for a new trial.
FACTS
¶ 2. Thomas met Karen Burks shortly after she evacuated to Jackson, Mississippi following Hurricane Katrina. The two began living together in a one-bedroom apartment in Jackson. They argued frequently, and Burks would occasionally lock Thomas out of the apartment. One night, the two went grocery shopping together. After they returned home, Thomas left to check on a possible job for the next day. While he was gone, Burks consumed a few beers.
¶ 3. When Thomas returned to the apartment, he claimed that Burks was high. Thomas testified that he and Burks began to argue again, so he prepared to leave. He retrieved two tote bags that he always kept packed and some groceries. He went back to the bedroom to get his shoes. Thomas then stated that Burks came into the bedroom with a knife and tried to stab him to keep him from leaving. Thomas testified that he was trying to pull on her arm to make her drop the knife when she “snatched,” and the knife hit her in the chest. He then pulled the knife out and broke the blade off of the handle so Burks could not use the knife again. He put the blade in his pocket and threw it away later on that night.
¶ 4. Thomas left the apartment to find a phone to call for help. He later saw an ambulance go by and could see the paramedics working on someone. He then became afraid of what Burks’s family might do if he went back to the apartment, so he did not return to the apartment that night.
¶5. Of course, Burks’s version of the events was significantly different from Thomas’s testimony. She testified that Thomas had been drinking, but she could not recall what they fought about or what was said. She stated that Thomas threatened to kill her. Thomas covered her mouth and held her down while he stabbed her. After Thomas left, Burks made her way to a neighbor’s front porch, and the neighbor called 9-1-1.
¶ 6. Officer Jerrick Taylor arrived and found Burks lying on her back and covered in blood. Burks told Taylor that her boyfriend, Anthony Thomas, had stabbed her twice. Burks was able to give Officer Taylor a description of Thomas consisting of his height, weight, hairstyle, missing teeth, and nickname. An ambulance arrived and transported Burks to the hospital. Burks was immediately taken to surgery.
¶ 7. The medical evidence showed that Burks sustained life-threatening stab wounds and lost at least forty percent of her blood volume. There were two stab wounds to her left chest — one cut her internal mammary artery, a large artery that runs behind the sternum, and the *132 other injured the left upper lobe of her lung.
¶ 8. After considering all of the evidence presented at trial, the jury returned a verdict of guilty as to both counts. Thomas filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial that was denied by the trial court. Thomas now appeals his convictions and sentence of life imprisonment without eligibility for parole.
STANDARD OF REVIEW
¶ 9. The standard of review we employ regarding the admissibility of evidence is well settled:
a trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling.
Robinson v. State, 940 So.2d 235, 238(¶ 7) (Miss.2006) (quoting Turner v. State, 732 So.2d 937, 946 (Miss.1999)).
ANALYSIS

Whether the trial court erred by permitting the prosecutor to inquire into the details of Thomas’s prior conviction for aggravated assault.

¶ 10. Thomas first claims that the trial court erred by permitting the prosecutor to inquire into the details of Thomas’s 1999 conviction for aggravated assault. He claims that the details released to the jury deprived him of a fair and impartial trial. Specifically, Thomas states that admission of this evidence was in violation of Mississippi Rules of Evidence 404(b) and 609(a)(1) and that the trial court failed to conduct an on-the-record Rule 609 balancing test as required by Peterson v. State, 518 So.2d 632, 636 (Miss.1987). The State argues that Thomas’s testimony opened the door to further questioning about the prior conviction.
¶ 11. The State concedes that the trial court erred by failing to conduct an on-the-record analysis of the Peterson factors; however, the State claims that the error was harmless in light of the overwhelming evidence of Thomas’s guilt and because it did not unfairly prejudice Thomas’s case.
¶ 12. On direct examination, Thomas testified as to what happened after he went to find help:
I couldn’t go back to the house. I couldn’t go back to the house. Her son probably would have killed me, and don’t even know what really went on. So I couldn’t go back. That’s the very reason I couldn’t go back to the house, because her son would have probably shot me.
Her nieces carry pistols, he carry [sic] pistols. I don’t carry pistols. He probably would have killed me, you understand.
¶ 13. Then, on cross-examination, the prosecutor asked Thomas the following:
Q: Did you say that you don’t carry a pistol? Is that what you said?
A: I don’t carry a pistol no more because Pm a convicted felon.
Q: You said I don’t carry a pistol. Do you remember saying that?
A: I don’t carry a pistol.
Q: Okay. Do you remember back in 1999 when you shot Ms. Alice Proctor, the aggravated assault that you were convicted of?
BY MR. MCWILLIAMS: Your hon- or, I’m going to object to that.
BY THE COURT: Pardon me?
BY MR. MCWILLIAMS: I’m going to object to that. There’s no testimony about him shooting anybody—
*133 BY MS. MANSELL: Your Honor, he opened the door. Well, we’ve got the indictment right here.
BY THE COURT: All right. Overruled.
BY MS. MANSELL: (Continuing)
Q: Do you remember shooting Ms. Alice Proctor, a woman that was going to leave you? Do you remember shooting her?
A: Yes, ma’am. I remember shooting her.
Q Okay. So you do carry pistols?
A But—
Q I didn’t ask you—
A —it wasn’t about no [sic] leaving.
Q I didn’t ask you for an explanation.
A Okay.
[[Image here]]
Q Okay. So you do carry pistols?
A No, ma’am.
Q You did back in 1999?
A Yes, ma’am.
Q So you’ve been convicted of aggravated assault of a woman back in 1999 because she was going to leave you; right?
A: No ma’am.
(Emphasis added).
¶ 14. Thomas is correct that the details of his conviction for shooting a woman in 1999 were inadmissable. Rule 404(b) states that “[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” “In addition to Rule 404(b), there exists a plethora of case law which warns that evidence of other wrongs is inadmissible in the trial of an accused to show behavior which conforms with the charge in the indictment.” Spraggins v. State, 606 So.2d 592, 593 (Miss.1992) (citations omitted).
¶ 15. During pretrial arguments, the prosecutor argued that this evidence was admissible under Rule 404(b) to show motive, opportunity, or intent because it was evidence that Thomas “likes to assault women.” However, there was no proof that his conviction for shooting another woman in 1999 had any effect on his motive, opportunity, or intent to stab Burks.
¶ 16. On appeal, the State argues that prior convictions may be used to impeach a criminal defendant under Rule 609, citing Bogard v. State, 624 So.2d 1313, 1316 (Miss.1993). While this statement is true, the details of Thomas’s 1999 conviction were not used to impeach his testimony. He clearly stated to the jury that he no longer carries a pistol because he is a convicted felon. The State had already introduced evidence of Thomas’s prior conviction; there was no need to impeach his testimony on this issue. Thus, the prosecutor’s line of questioning into the details of Thomas’s prior conviction is inadmissible evidence.
¶ 17. However, the State also argues on appeal, as the prosecutor did at trial, that the defendant’s statement that he does not carry a pistol because he is a convicted felon opened the door to further cross-examination regarding his prior conviction. Upon our review of Mississippi case law as to what constitutes “opening the door,” we are unconvinced by this argument.
¶ 18. We begin with a case in which the supreme court found that the defendant’s testimony opened the door. In Quinn v. State, 479 So.2d 706, 707 (Miss.1985), Quinn was charged with the sale of a controlled substance. The prosecutor was allowed to offer evidence that Quinn had made another sale of marijuana just four days before the charged offense occurred. Id. The supreme court held that the evidence of the prior sale was inadmissible because it did not result in a conviction; *134 however, Quinn opened the door during direct examination. Id. at 708. Quinn stated that he had never at any time sold marijuana to anyone. Id. Thus, he opened the door, and for impeachment purposes, the trial court allowed the prosecutor to question him about the prior sale. Id.
¶ 19. The supreme court reached a different result on this issue in Stewart v. State, 596 So.2d 851, 854 (Miss.1992). During direct examination, Stewart testified that he only knew what cocaine looked like because he had seen it on television. Id. at 853. The prosecutor was then allowed to question whether Stewart had seen cocaine during an incident on August 22, 1989. Id. Stewart admitted that he had seen cocaine at that time. Id. The supreme court held that the door had been opened; however, the prosecutor exceeded the invitation. Id. at 854. Instead of ending the questioning after Stewart admitted that he had seen the cocaine, “the prosecution was allowed to question Stewart about his alleged possession of the cocaine on August 22, about his attempted concealment of the cocaine on his mother’s person, and about the fact that all of this took place at the Indianola Police Department.” Id. Holding that “the prosecution’s impeachment privilege may not exceed the invitation extended,” Stewart’s conviction was reversed, and the case was remanded for a new trial. Id. at 853-54.
¶ 20. This Court decided a similar issue in Sanders v. State, 755 So.2d 1256 (Miss.Ct.App.2000). Sanders testified about conversations he had with his probation officer. Id. at 1257(¶ 4). The prosecutor then argued that Sanders had opened the door to questions regarding his prior conviction. Id. at (¶ 5). The Court held that Sanders had opened the door to the fact that he was on probation; however, the details of his previous conviction substantially exceeded the scope of Sanders’s invitation to introduce otherwise-inadmissable evidence. Id. at 1258(¶ 9).
¶ 21. Similarly, here, we find that the prosecutor exceeded the scope of the invitation. If, as the State argues, Thomas’s statement, “I don’t carry pistols,” opened the door, it only opened it for impeachment purposes for the prosecutor to show that Thomas does, in fact, carry a pistol. That is not what the prosecutor attempted to prove. Instead, she questioned him about whether he carried a pistol in 1999. While it is arguable that Thomas’s initial statement, “I don’t carry pistols,” could have been construed to mean that he had never carried a pistol, any ambiguity was resolved on cross-examination when Thomas stated, “I don’t carry a pistol no more [sic] because I’m a convicted felon,” indicating that he was referring to his present practice of not carrying a weapon.
¶ 22. The door was opened to the fact that Thomas was a convicted felon, a fact already divulged to the jury; however, the prosecutor’s further questioning regarding the shooting of Proctor went far beyond the scope of the invitation. Thus, the jury heard evidence that Thomas shot another woman and pleaded guilty to aggravated assault — the exact crime charged here. It is clear that the prosecutor was not trying to impeach Thomas’s testimony or offer additional evidence to prove that Thomas was a convicted felon. Instead, the prosecutor’s objective was to prejudice the jury and imply that Thomas was guilty of stabbing Burks simply because he shot Proctor in 1999. This implication is evident in the prosecutor’s statement during closing argument: “And then it became [Burks’s] fault. It [is] kind of like a running thing with him with women. Well, look what you done did [sic] to yourself. You stabbed yourself. Well, the gun went off. Running thing.”
*135 ¶ 23. We find that the details of Thomas’s prior conviction were inadmissable. Further, Thomas did not open the door to the extent that the prosecutor was allowed to address the shooting. We cannot hold that this error was harmless as evidence of Thomas’s prior conviction for the same crime of aggravated assault was highly prejudicial. It would be impossible for this Court to conclude that this “error was unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.” Williams v. State, 761 So.2d 149, 154(¶ 18) (Miss.2000) (quotation omitted). It is exactly this inference that Rule 404(b) seeks to prevent.
¶ 24. Thomas has been denied a fundamentally fair trial; thus, his conviction is reversed, and this case is remanded for a new trial. Because we find reversible error based on this issue, Thomas’s remaining assignments of error need not be addressed.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE, P.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. MYERS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.